**JSP AGENCY, INC., Plaintiff,**

**v.**

**AMERICAN SUGAR REFINING CO. OF NEW YORK, Amstar Corp., Northern Lines, Inc., Athenian Shipping Corp., Caribbean Charterers & Operators, Ltd., Ambrit Sugars, Inc., C. Czarnikow, Inc., Czarnikow-Rionda Company, Inc., B.W. Dyer & Company, Farr Mann & Co., Inc., M. Golodetz & Co., Inc., Lonray, Inc., Amerop, Division of Westway Trading Corporation, Woodhouse, Drake & Carey, Inc., Florida Sugar Marketing and Terminal Association, Inc., Hogan & Company, Inc., Phillipine Sugar Trading Corp., Subsidiary of National Sugar Trading Association, Marc Rich & Co. Sugar Ltd. and Allied Towing Corporation, Subsidiary of Allied Marine Industries, Defendants.**

No. 82 Civ. 1966 (WK).

United States District Court,
S.D. New York.

June 26, 1984.

Lambos, Flynn, Nyland & Giardino, New York City, by Peter C. Lambos, New York City, for plaintiff.

Healy & Baillie, by Thomas L. Rohrer, New York City, for defendants Amstar Corp. and American Sugar Refining Co. of New York.

Brauner, Baron, Rosenzweig, Kliger, Sparber & Bauman by Mel P. Barkan, New York City, for defendants Northern Lines, Farr Mann & Co. and Philippine Sugar.

McHugh, Leonard & O'Connor by William Sullivan, New York City, for defendants Ambrit Sugars, C. Czarnikow, Inc. Czarnikow-Rionda Co., M. Golodetz & Co., Lonray, Inc., Amerop Div/Westway Trading Corp., Florida Sugar Marketing & Terminal Ass'n., Inc., Hogan & Co. and Allied Towing Corp., a subsidiary of Allied Marine Industries.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff JSP Agency, Inc. ("JSPA") has brought this action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to hold the various defendants liable for payments pursuant to a collective bargaining agreement. Plaintiff and defendants [1] have now cross-moved for summary judgment. For the reasons stated below, we grant defendants' motions.

### INTRODUCTION

In 1977, the International Longshoremens Association ("ILA"), to protect its fringe benefit programs from the effects of declining employer contributions, entered into a collectively-bargained agreement—the JSP, or Job Security Program, Agreement ("Agree-

---

**1.** Of the five defendants who have not moved for summary judgment, two—B.W. Dyer & Co. and Woodhouse, Drake & Carey, Inc.—have been dismissed, while three—Athenian Shipping Corp., Caribbean Charterers & Operators, Ltd., and Marc Rich + Co. Sugar Ltd.—have never been served.

ment")—with some 200 "steamship carriers" utilizing ILA labor in 34 designated ports, including the port of New York. Pursuant to the Agreement, the carrier signatories agreed to pay tonnage assessments on cargo handled by ILA dockworkers in the designated ports. The Agreement is part of the Master Contract between the ILA and various port associations, including the New York Shipping Association ("NYSA") however, the Agreement and the Master Contract are separately negotiated and subscribed to, with the result that parties to one are not necessarily parties to the other.

The Agreement was to be administered by JSPA, a non-stock, not-for-profit organization, all of whose 83 members—owners, charterers and operators of cargo-carrying vessels—were among the signatories to the Agreement.[2]

Liability for the tonnage assessments, at issue in this action, is set forth by Paragraph 9 of the Agreement:

> Each Carrier, private and governmental, which utilizes or contracts for employees covered by this agreement shall be required to execute this agreement and to furnish any undertaking required for faithful performance of the requirements of this agreement, provided, however, that no Carrier shall be required to furnish such an undertaking to any local port association unless such association subscribes to this agreement and agrees to be bound by its terms and conditions. If any Carrier does not subscribe to the JSP Agreement, the ILA shall have the right not to work on the loading or discharging of its ships or any work ancillary thereto.

The Agreement was filed in the Federal Register on December 5, 1977, at 42 F.R. 61516, and approved on December 16, 1977 by the Federal Maritime Commission ("FMC"), under § 15 of the Shipping Act, 46 U.S.C. § 814. The FMC held that the Agreement was not

> ... unjustly discriminatory or unfair as between carriers, shippers, exporters, im-

porters, or ports or between exporters from the United States and their foreign competitors; detrimental to the commerce of the United States; contrary to the public interest, or in violation of the Shipping Act, 1916.

On June 3, 1982, the ILA and JSPA "on behalf of its members" entered into an amendment to the Agreement ("Amendment"). The Amendment, which was designed to combat the difficulties faced by JSPA in its attempts to collect the tonnage assessments, added the following provisions to ¶ 9 of the Agreement:

> Every stevedore and terminal operators employing ILA labor subject to the JSP Agreement shall first procure a subscription agreement from the Carrier requesting the services of ILA labor in the loading or unloading of its vessel(s)....
>
> Stevedores and terminal operator who fail to get a subscription agreement from Carriers utilizing ILA labor in the ports subject to the JSP Agreement shall be jointly liable with the nonsubscribing Carrier in the amount of any unpaid JSP tonnage assessment. Such subscription agreement shall not be necessary where the Carrier has directly subscribed to the master agreement and the JSP Agreement.

Plaintiff seeks to hold defendants liable, pursuant to the above-quoted provisions of the Agreement and the Amendment, for tonnage assessments on cargo shipped into the port of New York.

Defendant Amstar Corp. ("Amstar") is a purchaser of bulk raw sugar; defendant American Sugar Refining Co. of New York ("American Sugar") is Amstar's stevedore subsidiary and is a member of the NYSA. All other defendants are either the agents, owners or charterers of tramp vessels carrying shipments of bulk sugar which were discharged at Amstar's New York port facility by ILA dockworkers, usually American Sugar employees. All freight was to be discharged on a Free-In and Free-Out basis pursuant to the Bulk Sugar

---

**2.** The Agreement has approximately 200 signatories, including all 83 JSPA members.

Party—U.S.A., meaning that as between the charterer and the shipowner, the charterer was responsible for all stevedoring charges incurred in the discharge of the cargo. Where American Sugar was the stevedore, Amstar simply reduced the price it paid for the sugar by the amount of the stevedoring charges, which charges—as Amstar notified the charterers in 1978, when it raised its stevedoring rates—did not include assessments under the Agreement.

None of the defendants is a member of JSPA; none is a signatory to the Agreement or the Amendment; none, except American Sugar, is a member of the NYSA or any other party to the Master Contract. All defendants have at all times indicated their unwillingness to be bound by either the Agreement or the Amendment, and have steadfastly refused to pay any assessments on the grounds that they are not so bound. Although it has the right under paragraph 9 of the Agreement, the ILA has never refused to load, discharge, or perform any ancillary work for any of the defendants.

## DISCUSSION

Plaintiff's contention is, in a nutshell, that despite their non-signatory status and their refusal to be bound by the Agreement or the Amendment, defendants may nonetheless be held to the provisions of those instruments. We cannot agree.

█ Plaintiff's most simplistic argument is that all defendants are bound simply because the signatories to the Agreement and the Amendment desired and intended them to be. Thus, according to plaintiff, the terms of the Agreement indicate an intent to bind all carriers, which category—

according to plaintiff—includes all defendants save Amstar and American Sugar; while the Amendment sets forth joint liability for all carriers, stevedores, and terminal operators. Several of the defendants have contended that they are not in fact covered by the language of these documents;[3] while we think this position is not without merit, we need not decide this issue, since we are aware of no authority for the proposition that an entity may be bound to a contract, against its will, solely on the agreement and signatures of others. We are aware of no labor or trust-fund type agreement of which this is true, nor has plaintiff referred us to any; and certainly it is contrary to all principles of contract law of which we are aware.

█ Plaintiff contends, however, that as a member of the NYSA, which is a party to the Master Contract, American Sugar may be *deemed* a signatory to the Amendment. Although the NYSA unquestionably has authority to bind its members to the Master Contract, to which it is a party, this is not the same as the authority to bind anyone to the Agreement, to which it is not.[4] At oral argument plaintiff cited several documents which, it contended, demonstrated that the NYSA possessed and had exercised this latter authority, and subsequently submitted these documents for our consideration. As far as we can tell, these documents clearly establish that the NYSA had power to, and did, bind its members to pay its own subscription rates; and that the NYSA thought that its members were bound by the Amendment and so informed them and others. This understanding, however, is of no more force than the understanding of the parties to the Agree-

---

**3.** Defendants note that the preface to the Agreement defines "carriers" as "the Undersigned Carriers," and contend in addition that tramps and charterers are not in fact common carriers at all. Several defendants have further asserted that they were not involved in any of the shipments for which plaintiff seeks to collect the assessments under the Agreement. Plaintiff has conceded that Amstar and American Sugar, which by no stretch of the imagination are carriers, are not covered by the Agreement;

Amstar contends in addition that no independent cause of action is asserted as to it which might bring it under the Amendment.

**4.** Although it has not been made clear to us how the NYSA can be a party to the Master Contract yet not to a subdivision thereof, all parties agree that this is indeed the case. Transcript of January 13, 1984 at 9.

ment that they could bind an outsider. The bottom line is that the NYSA, not being a signatory to the Agreement or the Amendment, could not and did not bind its members to their provisions; nor did American Sugar bind itself.

■ Plaintiff next contends—again, assuming that all defendants are covered by the terms of the Agreement or the Amendment—that the FMC's approval is sufficient to override their lack of consent. However, this approval has no such far-reaching ramifications. 46 U.S.C. § 814 provides:

> Assessment agreements, whether part of a collective bargaining agreement or negotiated separately, to the extent that they provide for the funding for the collectively bargained fringe benefit obligations ... shall be deemed approved upon filing with the Commission.....
>
> Any agreement and any modification or cancellation of any agreement not approved, or disapproved, by the Commission shall be unlawful, and agreements, modifications, and cancellations shall be lawful only when and as long as approved by the Commission....
>
> Every agreement, modification or cancellation lawful under this section ... shall be excepted from the provisions of sections 1 to 11 and 15 of Title 15, and the amendments and Acts supplementary thereto.

As the above-quoted excerpt from the FMC's approval of the Agreement aptly illustrates, such approval does no more than provide antitrust immunity. Plaintiff argues that an agreement which has been granted this immunity and is thus "lawful" has the "force of law" upon all entities included in the Agreement, whether or not they have agreed to give it such force. Plaintiff relies for this proposition upon

New York Shipping Ass'n. v. Retla Steamship Co. (1st Dep't 1975) 47 A.D.2d 825, 365 N.Y.S.2d 550, appeal dismissed, 36 N.Y.2d 870, 370 N.Y.S.2d 925, 331 N.E.2d 700, and on In re Primary Industries Corp. (S.D.N.Y. Sept. 29, 1983) 83 Civ. 3883 (RWS), which in turn relies upon Retla. These cases do give support to plaintiff's contention that non-signatory carriers are liable for FMC-approved assessments. However, no rationale for this holding is given in either case, save that "the legality of the charge is derived from the approval by the Federal Maritime Commission," Retla, supra, 365 N.Y.S.2d at 551. That the legality of the assessment under the antitrust laws is so established is beyond dispute; the "legality" of applying it to entities which have not agreed to be bound by it is quite another matter, and one which we do not agree can be established simply by a declaration of antitrust immunity or by the intent of third parties. We therefore decline to follow the holdings of Retla and Primary Industries.[5] The other cases relied upon by plaintiff simply do not support the proposition that FMC approval gives the force of law to otherwise invalid contract provisions, but address the very different issues of when an agreement must be submitted for FMC approval and what are the rights and responsibilities of parties admittedly subject to agreements so approved.[6]

■ Finally, plaintiff contends that the charterer defendants are liable for payments under the Agreement—and American Sugar jointly with them under the Amendment—because of the "F.I.O." terms of the Bulk Sugar Party-U.S.A. The "F.I.O." terms, however, merely indicate who is to pay stevedoring charges; they do not determine that the parties who have

---

**5.** The New York Court of Appeals dismissed the Retla appeal upon a finding "that the order appealed from does not finally determine the action within the meaning of the Constitution." 370 N.Y.S.2d at 925, 331 N.E.2d at 700.

**6.** We are unimpressed by plaintiff's contention, stated at oral argument, that FMC approval would not have been given except upon assur-

ances that everyone mentioned in the Agreement and the Amendment would be bound thereby. Even assuming this to be the FMC's intent, this is no more than a rehash of the rejected argument that the expectations and intent of third parties are binding upon defendants.

agreed to accept such an allocation must in addition pay charges for which they have not bargained. The cases relied upon by plaintiff do not hold that a party responsible under an "F.I.O." provision must pay charges nowhere included in its contracts, and we shall not so hold here.

We therefore grant summary judgment on behalf of all defendants and dismiss this action.

SO ORDERED.